```
Scott W. Wellman, SBN: 82897
Bimali Walgampaya, SBN: 266856
WELLMAN & WARREN LLP
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738

Attorneys for Defendants Michael Mai, Dearborne Circle, LLC
And Claude Kramer, III
```



FILED - SOUTHERN
CLERK, U.S. DIST
DEC 3 – 2010
CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., a corporation; and ORACLE CREDIT CORPORATION, a corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>QUIN RUDIN, an individual; MICHAEL MAI, an individual; CLAUDE KRAMER III, an individual; JOSHUA VAN GINKEL, an individual; DAVID CUEVAS, an individual; MARK TIERNAN, an individual; RICK RUTHERFORD, an individual; CERTUS SOLUTIONS, INC. (a/k/a CERTUS, INC.), a corporation; CRESH, INC. (a/k/a CRESH GROUP), a corporation; DEARBORNE CIRCLE, LLC, a limited liability company; CERTUS GROUP OF COMPANIES, LLC (a/k/a CGC GROUP), a limited liability company; CGC RHYTHM PARTNERS, LLC, a limited liability company; K2 INFORMATION SERVICES, INC., a corporation; | Case No.:<br>Judge:   **SACV10-01853 DOC (RNBx)**<br>Dept.:<br><br>**NOTICE OF REMOVAL OF ACTION**<br><br>**(FEDERAL QUESTION JURISDICTION, 28 U.S.C. SECTION 1331)** |

| | |
|---|---|
| 1 | ALETHEA GROUP, LLC (a/k/a |
| 2 | ALETHEA LLC), a limited liability company; and DOES 1-20, |
| 3 | |
| 4 | Defendants. |

PLEASE TAKE NOTICE that Defendants Michael Mai ("Mai"), Dearborne Circle, LLC ("Dearborne") and Claude Kramer III ("Kramer") (collectively "Defendants"), hereby remove to this Court the state court action described below:

1. On November 3, 2010, Plaintiffs Oracle America, Inc. and Oracle Credit Corporation ("Plaintiffs") commenced an action in the Superior Court of California, County of Orange, captioned *Oracle, et. al. v. Rudin, et. al.*, Case No. 30-2010-00422028 (the "State Court Action"). The action was filed against Quin Rudin, Michael Mai, Claude Kramer, III, Joshua Van Ginkel, David Cuevas, Mark Tiernan, Rick Rutherford, Certus Solutions, Inc., Cresh, Inc., Dearborne Circle, LLC, Certus Group of Companies, LLC, CGC Rhythm Partners, LLC, K2 Informatiom Services, Inc., and Alethea Group, LLC.

2. The first date upon which the Defendants Mai and Dearborne received a copy of the Summons and Complaint was on November 4, 2010. Defendant Kramer has not been personally served but Wellman & Warren, LLP has agreed to accept service oon

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

2

NOTICE OF REMOVAL OF ACTION

behalf of Kramer. Defendants were not served with any other initial pleadings thereafter.

3. Defendants have not filed an Answer or any other responsive document in the State Court Action. However, Plaintiffs and Defendants have stipulated to allow Defendants until January 7, 2010 to file a response to their Complaint. The stipulation was filed with the Orange County Superior Court, but has not been signed by the Superior Court judge as of this date.

4. To Defendants' knowledge, no other pleadings or documents have been filed in the State Court Action. Copies of the Summons for Defendants and the Complaint are attached hereto as Exhibit A.

5. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1331, and is one in which may be removed to this Court pursuant to 28 U.S.C. Section 1441(b) in that it involves the following federal questions:

   a. Whether Defendants committed violations of the Federal Racketeer Influenced and Corrupt Organizations Act.

6. This action is one is which may be removed to this Court pursuant to 28 U.S.C. Section 1367 in that this Court may have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy:

   a. Whether Defendants committed fraud;

b. Whether Defendants breached any contracts;

c. Whether Defendants were unjustly enriched;

d. Whether Defendants received money that belonged to Plaintiffs; and

b. Whether Defendants violated statutory unfair businesspractices.

8. A copy of the Notice of Removal will be filed with the Clerk of the Orange County Superior Court, in conformity with 28 U.S.C. Section 1446(d).

9. Written notice of the filing of this Notice of Removal will be given to all adverse parties known to Defendants in conformity with 28 U.S.C. Section 1446(d). Such notice shall be attached as a proof of service to all documents mailed to all adverse parties.

10. By filing this Notice of Removal, Defendants do not waive any defenses, claims or rights of any kind.

11. Pursuant to 28 U.S.C. Section 1446(a), Defendants have removed this action to "the district court of the United States for the district and division within which such action is pending…" As the State Court Action was pending in the County of Orange, Defendants have removed the action to the United States District Court, Central District of California, Southern Division.

12. Venue is appropriate here pursuant to 28 U.S.C. Section 1391(b) because a civil action "wherein jurisdiction is not founded solely on diversity of citizenship may…be brought only in (2) a judicial district in which a substantial part of the events

4

NOTICE OF REMOVAL OF ACTION

or omissions giving rise to the claim occurred." Much of the misconduct described in the Complaint was perpetrated in Orange County, California. Therefore, venue is appropriate in this Court.

WHEREFORE, Defendants hereby remove the State Court Action from the Superior Court of the State of California, County of Orange to this Court.

///

Dated: December 3, 2010

WELLMAN & WARREN LLP

By: _____
Scott Wellman
Bimali Walgampaya
Attorney For Defendants

# EXHIBIT "A"

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* QUIN RUDIN, an individual; MICHAEL MAI, an individual; CLAUDE KRAMER III, an individual; JOSHUA VAN GINKEL, an individual; DAVID CUEVAS, an individual; MARK TIERNAN, an individual; RICK RUTHERFORD, an individual; CERTUS SOLUTIONS, INC. (a/k/a CERTUS, INC.), a corporation; CRESH, INC. (a/k/a CRESH GROUP), a corporation; DEARBORNE CIRCLE, LLC, a limited liability company; CERTUS GROUP OF COMPANIES, LLC (a/k/a CGC GROUP), a limited liability company; CGC RHYTHM PARTNERS LLC, a limited liability company; K2 INFORMATION SERVICES, INC., a corporation; ALETHEA GROUP, LLC (a/k/a ALETHEA LLC), a limited liability company; and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* ORACLE AMERICA, INC., a corporation; and ORACLE CREDIT CORPORATION, a corporation

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

NOV 03 2010

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Orange County Superior Court
Central Justice Center
700 Civic Center Drive West
Santa Ana, CA 92701

**CASE NUMBER:**
*(Número del Caso):*
30-2010
00422028

JUDGE ROBERT J. MOSS
DEPT C23

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daryl M. Crone                                    (424) 652-7800    (424) 652-7850
Baker Marquart Crone & Hawxhurst LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, CA 90024

DATE: NOV 03 2010                  ALAN CARLSON     Clerk, by BRITTNEY LEA , Deputy
*(Fecha)*                                           *(Secretario)*                      *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* QUIN RUDIN, an individual; MICHAEL MAI, an individual; CLAUDE KRAMER III, an individual; JOSHUA VAN GINKEL, an individual; DAVID CUEVAS, an individual; MARK TIERNAN, an individual; RICK RUTHERFORD, an individual; CERTUS SOLUTIONS, INC. (a/k/a CERTUS, INC.), a corporation; CRESH, INC. (a/k/a CRESH GROUP), a corporation; DEARBORNE CIRCLE, LLC, a limited liability company; CERTUS GROUP OF COMPANIES, LLC (a/k/a CGC GROUP), a limited liability company; CGC RHYTHM PARTNERS LLC, a limited liability company; K2 INFORMATION SERVICES, INC., a corporation; ALETHEA GROUP, LLC (a/k/a ALETHEA LLC), a limited liability company; and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* ORACLE AMERICA, INC., a corporation; and ORACLE CREDIT CORPORATION, a corporation

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

NOV 03 2010

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Orange County Superior Court
Central Justice Center
700 Civic Center Drive West
Santa Ana, CA 92701

**CASE NUMBER:** *(Número del Caso):* 30-2010 00422028

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daryl M. Crone
Baker Marquart Crone & Hawxhurst LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, CA 90024
(424) 652-7800   (424) 652-7850

JUDGE ROBERT J. MOSS
DEPT. C23

DATE: NOV 03 2010            Clerk, by BRITTNEY LEA, Deputy
*(Fecha)*         ALAN CARLSON   *(Secretario)*                *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Dearborne Circle, LLC.
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Legal Solutions

COPY
Code of Civil Procedure §§ 412.20, 465
Page 1 of 1

| | |
|---|---|
| 1 | Daryl M. Crone (Bar No. 209610) |
|   | dcrone@bmchlaw.com |
| 2 | Jaime W. Marquart (Bar No. 200344) |
|   | jmarquart@bmchlaw.com |
| 3 | BAKER MARQUART CRONE & HAWXHURST LLP |
|   | 10990 Wilshire Blvd., Fourth Floor |
| 4 | Los Angeles, California 90024 |
|   | Telephone:   (424) 652-7800 |
| 5 | Facsimile:   (424) 652-7850 |

6  Attorneys for Plaintiffs
   Oracle America, Inc. and Oracle Credit Corporation

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

NOV 0 8 2010

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE  30-2010

ORACLE AMERICA, INC., a corporation; and ORACLE CREDIT CORPORATION, a corporation,

  Plaintiffs,

  v.

QUIN RUDIN, an individual; MICHAEL MAI, an individual; CLAUDE KRAMER III, an individual; JOSHUA VAN GINKEL, an individual; DAVID CUEVAS, an individual; MARK TIERNAN, an individual; RICK RUTHERFORD, an individual; CERTUS SOLUTIONS, INC. (a/k/a CERTUS, INC.), a corporation; CRESH, INC. (a/k/a CRESH GROUP), a corporation; DEARBORNE CIRCLE, LLC, a limited liability company; CERTUS GROUP OF COMPANIES, LLC (a/k/a CGC GROUP), a limited liability company; CGC RHYTHM PARTNERS LLC, a limited liability company; K2 INFORMATION SERVICES, INC., a corporation; ALETHEA GROUP, LLC (a/k/a ALETHEA LLC), a limited liability company; and DOES 1-20,

  Defendants.

CASE NO. 00422028
JUDGE ROBERT J. MOSS
COMPLAINT FOR: DEPT. C23

(1) VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
(2) FRAUD;
(3) BREACH OF CONTRACT;
(4) BREACH OF CONTRACT;
(5) BREACH OF CONTRACT;
(6) BREACH OF CONTRACT;
(7) UNJUST ENRICHMENT;
(8) MONEY HAD AND RECEIVED;
(9) STATUTORY UNFAIR BUSINESS PRACTICES

DEMAND FOR JURY TRIAL



Plaintiffs Oracle America, Inc. and Oracle Credit Corporation (collectively, "Oracle"), for their Complaint against Defendants Quin Rudin, Michael Mai, Claude Kramer III, Joshua Van Ginkel, David Cuevas, Mark Tiernan, Rick Rutherford, Certus Solutions, Inc. (a/k/a Certus, Inc.), Cresh, Inc. (a/k/a Cresh Group), Dearborne Circle, LLC, Certus Group of Companies, LLC (a/k/a CGC Group), CGC Rhythm Partners LLC, K2 Information Services, Inc., Alethea Group, LLC (a/k/a Alethea LLC) and Does 1-20 (collectively, "Defendants"), allege as follows:

## INTRODUCTION

1. Oracle offers the world's most complete, open and integrated business software and hardware systems to customers worldwide. Oracle brings this lawsuit to recover damages caused by a syndicate of individuals and entities united for the malicious purpose of defrauding Oracle as well as its end-user customers (including an agency of the U.S. government). Oracle has yet to uncover the full extent of this scheme, but from what it has discovered to date, Oracle alone has suffered more than $1 million in damages stemming from Defendants' illegal conduct.

2. Defendants evidently scrutinized Oracle's business practices, including Oracle's extension of credit to customers in connection with the purchase of Oracle products and services, in order to devise an exploitative fraudulent scheme. On information and belief, Defendants established an enterprise consisting of: (1) a group of fraudulent entities posing as legitimate Oracle "partners" (the "Fraudulent Partners"); and (2) a second group of fraudulent entities represented to be legitimate end-user customers (the "Fraudulent End-Users"). Oracle discovered too late that the same individuals and their co-conspirators were principals of, and conducted the business of, both sets of entities. (The association of Fraudulent Partners, Fraudulent End-Users and individual defendants are referred to collectively herein as the "Enterprise.") On information and belief, many of the Enterprise members were simply fictitious and/or were established for the sole purpose of furthering Defendants' illegal scheme.

3. The Fraudulent End-Users placed orders for Oracle products and services via the Fraudulent Partners, and often "paid" for those orders by obtaining financing from Oracle Credit Corporation ("OCC") through further artifice. For example, Defendants delivered transactional

- 1 -

documents to OCC, such as a corporate guaranty, purportedly authorized by legitimate third-party entities. Believing the transactions to be legitimate, Oracle made available to the Fraudulent End-Users the software products that they ordered, and the Fraudulent Partners received a profit "margin" consisting of the difference between the price charged to the end-user and the discounted price of the order. Defendants therefore benefitted doubly from their fraud without ever incurring any out-of-pocket expense.

4. Defendants first had the Fraudulent End-Users place small orders for Oracle products in rapid succession. Their obvious goal was to establish the Fraudulent Partners, through which the orders were placed, as "legitimate," before attempting to place larger fraudulent orders. Defendants then ceased their financing efforts and instead sought and obtained a significant purchase contract with the federal Pension Benefit Guaranty Corporation ("PBGC") for the delivery of Oracle software licenses and support services. The PBGC paid the Fraudulent Partner involved in this transaction more than $900,000.00, but neither that Fraudulent Partner nor any of the other Defendants has ever paid Oracle for the software licenses and support services that Oracle provided to the PBGC.

5. Even after successfully bilking Oracle and its legitimate customers out of more than $1 million dollars in cash and property, the fraudulent acts perpetrated by Defendants' Enterprise have not abated. Instead, Defendants have redirected their efforts toward delaying and preventing Oracle, its customers and its associates from discovering the truth and pursuing legal action.

6. When the extent of Defendants' fraudulent scheme finally began to come to light, Oracle recognized that it was left with no other option than to bring this suit to vindicate its rights. Oracle seeks the Court's assistance in holding Defendants accountable for their significant, injurious misconduct under the federal Racketeer Influenced and Corrupt Organizations Act, and under California law.

-2-

COMPLAINT

# THE PARTIES

7. Plaintiff Oracle America, Inc. (successor in interest to "Oracle USA, Inc.") is, and at all relevant times was, a corporation organized under the laws of the State of Delaware, with its principal place of business located in Redwood Shores, California.

8. Plaintiff Oracle Credit Corporation is, and at all relevant times was, a corporation organized under the laws of the State of California with its principal place of business located in Redwood Shores, California. Oracle America, Inc. and Oracle Credit Corporation are each subsidiaries of Oracle Corporation.

9. On information and belief, defendant Certus Solutions, Inc. (a/k/a Certus, Inc.) ("Certus") is, and at all relevant times was, an entity holding itself out as organized under the laws of the State of Delaware and actively registered to do business in California, with its principal place of business purportedly located at the same address in Costa Mesa, California, as defendants Cresh, Inc., and Certus Group of Companies, LLC.

10. On information and belief, defendant Cresh, Inc. (a/k/a Cresh Group) ("Cresh") is, and at all relevant times was, an entity of unknown origin holding itself out as an active California corporation that purportedly shares a principal place of business in Costa Mesa, California, with defendants Certus and Certus Group of Companies, LLC.

11. On information and belief, defendant Certus Group of Companies, LLC (a/k/a CGC Group) is, and at all relevant times was, a limited liability company organized under the laws of the State of California that purportedly shares a principal place of business in Costa Mesa, California, with defendants Certus and Cresh.

12. On information and belief, defendant CGC Rhythm Partners LLC ("CGCRP") is, and at all relevant times was, an entity of unknown origin holding itself out as a California limited liability company with its principal place of business in Laguna Hills, California.

13. On information and belief, defendant Dearborne Circle, LLC ("Dearborne") is, and at all relevant times was, a limited liability company organized under the laws of the State of California with its principal place of business located at the single-family residence of defendant

-3-

COMPLAINT

Michael Mai in Huntington Beach, California, and which holds itself out as the parent company of defendant Certus.

14. On information and belief, defendant K2 Information Services, Inc. ("K2") is, and at all relevant times was, an entity holding itself out as a corporation organized under the laws of the State of Texas and actively registered to do business in California, with its principal place of business purportedly located in Laguna Hills, California.

15. On information and belief, defendant Alethea Group, LLC (a/k/a Alethea LLC) ("Alethea") is, and at all relevant times was, a limited liability company organized under the laws of the State of Washington with its principal place of business located in Seattle, Washington.

16. On information and belief, defendant Quin Rudin ("Rudin") is an individual residing in or about Seattle, Washington, who holds himself out as a "Managing Director" of defendant Certus, a "Managing Partner" of defendant Dearborne, a "Senior Managing Director" of defendant CGC Group, the "President" of defendant K2 and a principal in defendant Cresh.

17. On information and belief, defendant Michael Mai ("Mai") is an individual residing at the same Huntington Beach, California, address that professes to be Dearborne's principal place of business, and who holds himself out to be a "Managing Partner" of defendant Dearborne as well as the Oracle billing contact for defendant Certus, and who has used an email address at defendant CGC Group in communications with Oracle.

18. On information and belief, defendant Claude Kramer III ("Kramer") is an individual residing in or about San Leandro, California, who holds himself out as a member of defendant Certus' finance department, uses an email address at defendant Dearborne (including in connection with correspondence sent to Oracle), and holds himself out as the "Contract Administrator" for defendants Certus and Dearborne.

19. On information and belief, defendant Joshua Van Ginkel ("Van Ginkel") is an individual residing in or about Santa Ana, California, who holds himself out as "Managing Director" and "Chief Financial Officer" of defendant CGC Group, a member of the finance department at defendant Cresh and a principal of defendant Certus.

20. On information and belief, defendant David Cuevas ("Cuevas") is an individual residing in or about Laguna Hills, California, who holds himself out as the Chairman and Chief Executive Officer of defendant CGC Group and the Chairman of defendant CGCRP.

21. On information and belief, defendant Mark Tiernan ("Tiernan") is an individual residing in or about Seattle, Washington, who has represented himself to be a principal of defendant Alethea and the founder, Chairman and President of a company known as Aegis Technologies, Inc. (a/k/a Aegis Group, Inc.), an entity based in Seattle, Washington, which purports to share an address with Alethea.

22. On information and belief, defendant Rick Rutherford ("Rutherford") is an individual residing in or about Seattle, Washington, who has held himself out as the Chief Financial Officer of a company known as Premio, Inc., and an officer of Aegis.

23. On information and belief, each of the entity defendants is a mere alter ego, shell, instrumentality and conduit of each of the individual defendants. The individual defendants have directly managed, controlled and dominated the operations of the entity defendants, and a unity of ownership exists between the individual defendants, on the one hand, and the entity defendants, on the other, such that the entity defendants do not have separate legal personality. Under the circumstances, adherence to the separate corporate existence of the entity defendants would promote injustice and fraud, and it is equitable to treat each of the individual defendants as the alter ego of each of the entity defendants.

24. On information and belief, each defendant was the agent or co-conspirator of the other, and in acting as alleged herein, was doing so within the course and scope of such agency, conspiracy and/or relationship.

25. The true names and capacities of the Defendants sued herein as Does 1 through 20 are not known to Oracle, which therefore sues said Defendants by such fictitious names. Does 1 through 20 are the agents, co-conspirators or joint venturers of the named Defendants, and are acting in concert or participation with them in connection with the improprieties alleged herein. Oracle will amend this Complaint to allege their true names and capacities when the same are ascertained.

## JURISDICTION AND VENUE

26. Subject matter jurisdiction is appropriate in this Court because the amount in controversy exceeds this Court's jurisdictional minimum. The Court has personal jurisdiction over the Defendants because much of the misconduct described herein was perpetrated in Orange County, California, and was designed to defraud Oracle, which is headquartered in California, through communications sent to Oracle's offices located in California. The brunt of the harm caused by Defendants was directed at and suffered in California. Venue is appropriate in this Court because several of the individuals and entities named as defendants in this action reside in, or have their principal place of business in, Orange County.

## FACTUAL BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

### Oracle's Business

27. Oracle provides the world's most complete, open and integrated business software and hardware systems to customers worldwide. Among other things, Oracle offers best-in-class software solutions to assist with customer relationship management and database infrastructure management.

28. In addition to its internal sales force, Oracle relies upon a network of third-party "Partners" which are permitted to sell licenses to use Oracle's software, provided that such Partners meet certain requirements and consent to be bound by the terms of a written "Oracle Partner Network" agreement.

29. In a traditional sales transaction, a Partner obtains advance approval from Oracle to offer software licenses (as well as the first year's worth of "technical support services") to a particular end-user at a particular price, and then consummates the transaction by ordering the licenses from Oracle, thereby promising to pay for them. In such a transaction, the Partner would earn a profit margin on the difference between the end-user's purchase price paid to the Partner and the price paid by the Partner to Oracle.

30. Plaintiff Oracle Credit Corporation ("OCC") provides financing for certain software license and hardware transactions as a service to Oracle end-user customers. For example, in a financed transaction, an end-user customer might enter into a "Payment Plan

1 Agreement" and "Payment Schedule" providing for quarterly payments to OCC or its assignee
2 over a term of years. Following the execution of finance documentation, OCC or its assignee
3 often pays the sales price to Oracle directly and directs issuance of the Partner's profit "margin" to
4 the Partner.

Defendants' Fraudulent Financed Transactions

6     31. <u>The K2 Transaction.</u> On or about July 28, 2008, Fraudulent End-User K2 executed
7 an OCC Payment Plan Agreement and Payment Schedule on behalf of Defendants' Enterprise,
8 reflecting its desire to finance the acquisition of Oracle software licenses and technical support
9 services over the course of a one-year term, at a total cost of $45,908.00. In that documentation,
10 K2 identified another participant in Defendants' Enterprise, defendant Cresh, as its Oracle Partner.
11 True and correct copies of the Payment Plan Agreement and Payment Schedule executed by K2
12 are attached collectively as Exhibit A and incorporated herein as though set forth at length.

13     32. Oracle subsequently learned that K2 was not a bona fide end-user customer at all.
14 Defendant Rudin signed the financing paperwork in his capacity as "President" of K2, and
15 Mr. Rudin was also, on information and belief, a principal of Fraudulent Partner Cresh. On
16 information and belief, K2 was not an active entity at the time (having forfeited its charter months
17 before), and was being used by Cresh as a shell corporation to defraud Oracle and further the
18 conspiracy alleged herein. Thus, on information and belief, K2 and its co-conspirators never had
19 any intention of paying the amounts set forth in the OCC finance paperwork that K2 executed in
20 late July 2008.

21     33. In September 2008, Cresh received a wrongfully obtained and inflated Partner
22 profit "margin" of $35,070.00, based upon invoices that Cresh had provided to Oracle which later
23 proved to be fraudulent as well. Specifically, following a regularly conducted internal audit, OCC
24 discovered a significant irregularity in the paperwork that had been presented to Oracle: the
25 quantities of Oracle products listed on Cresh's invoice furnished to OCC failed to match the
26 quantities specified in Oracle's internal sales system because Cresh had provided a different
27 invoice to Oracle's sales team (reflecting an order of fewer products). Thus, even if the deal had
28 not been fraudulently induced, the margin for Cresh on the K2 deal should have been much less.

- 7 -
COMPLAINT

1  OCC personnel contacted defendant Van Ginkel to discuss the matter, who responded that Cresh disagreed with Oracle's calculations (without providing any basis for the disagreement) and that Cresh would not refund the discrepancy, despite Oracle's request that it do so.

34. In addition, K2 made no payment on the financing received pursuant to its Payment Plan Agreement and Payment Schedule, and, in December 2008, K2 was notified in writing that it had defaulted on the first of its loan payments due on October 1, 2008.

35. On or about January 13, 2009, an OCC executive named Ronald Strong called "Cresh" and spoke with defendants Cuevas, Rudin and Van Ginkel on various issues, including the K2 transaction. When asked why K2 had not remitted any of its payments due under its Payment Plan Agreement and Payment Schedule, defendants Cuevas, Rudin and Van Ginkel — who professed to speak on behalf of Fraudulent Partner Cresh as well as various Fraudulent End-Users, including K2—reported that Oracle supposedly had failed to provide an activation key for the software that K2 had financed, known as "Siebel CRM." However, Oracle makes the license keys—for Oracle software products that require keys—available to licensees on a website accessible over the Internet, and K2 could have easily obtained a key from that website as well as from various Oracle representatives if it ever truly lacked one. To date, K2 has never paid any amount owing under its Payment Plan Agreement and Payment Schedule.

36. <u>The CGCRP Transaction.</u> On or about July 28, 2008, Fraudulent End-User CGCRP executed on behalf of Defendants' Enterprise an OCC Payment Plan Agreement and Payment Schedule reflecting its desire to finance the acquisition of Oracle software licenses and technical support services over the course of a three-year term, at a total cost of $96,588.00. CGCRP identified Cresh as its Oracle Partner in that documentation. True and correct copies of the Payment Plan Agreement and Payment Schedule executed by CGCRP are attached collectively as Exhibit B and incorporated herein as though set forth at length.

37. Oracle subsequently learned that CGCRP was not a bona fide end-user customer, either. Defendant Cuevas signed the financing paperwork in his capacity as "Chairman" of CGCRP and, as Oracle later discovered, Mr. Cuevas was also, on information and belief, a principal of Cresh. Similarly, CGCRP had listed Van Ginkel as its "customer contact," but he

- 8 -

thereafter also spoke for Cresh. On information and belief, CGCRP was a fictional entity fabricated by the members of Defendants' Enterprise in order to defraud Oracle and further the conspiracy alleged herein. Thus, on information and belief, CGCRP and its co-conspirators never had any intention of paying the amounts set forth in the OCC finance paperwork that CGCRP executed in late July 2008.

38. In December 2008, CGCRP was given written notice that it had defaulted on the first of its loan payments due on November 1, 2008.

39. As alleged above, on or about January 13, 2009, OCC's Ronald Strong called "Cresh" and spoke with defendants Cuevas, Rudin and Van Ginkel on various issues. When asked why CGCRP had not remitted any of its payments due under the Payment Plan Agreement and Payment Schedule that it had executed, defendants Cuevas, Rudin and Van Ginkel stated that Oracle supposedly had failed to provide an activation key for the software that CGCRP had financed, *i.e.*, the same false representations as had been offered in relation to the K2 transaction. As noted above, CGCRP could have easily obtained an activation key from an Oracle website or from various Oracle representatives, if it ever truly lacked one. To date, CGCRP has never paid any amount owing under its Payment Plan Agreement and Payment Schedule.

40. <u>The Media Lead Transaction.</u> On or about August 1, 2008, end-user Media Lead LLC ("Media Lead"), an ostensibly legitimate end-user, executed an Oracle purchase order reflecting its acquisition of software licenses and technical support services totaling $122,500.00 in amount.

41. On August 4, 2008, Media Lead executed an OCC Payment Plan Agreement and Payment Schedule reflecting its desire to finance the entire acquisition set forth in the August 1, 2008 purchase order, over the course of a three-year term that was to begin on November 1, 2008. Media Lead identified Cresh as its Oracle Partner in that documentation. True and correct copies of the Payment Plan Agreement and Payment Schedule executed by Media Lead are attached collectively as Exhibit C and incorporated herein as though set forth at length.

42. On information and belief, in September 2008, Media Lead contacted Cresh and attempted to cancel its transaction on the grounds that Cresh had "changed" the terms of its